IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE
_____

**J.H. MOSER,**

     Appellee,

Vs.

Davidson Chancery No. 96-437-II
C.A. No. 01A01-9707-CH-00317

**DEPARTMENT OF TRANSPORTATION
OF THE STATE OF TENNESSEE,
TENNESSEE CIVIL SERVICE
COMMISSION, and J. BRUCE SALTSMAN,
SR., in his Official Capacity as Commissioner
of the Tennessee Department of Transportation,**

     Appellants.



**FILED**

**April 15, 1998**

**Cecil W. Crowson
Appellate Court Clerk**

FROM THE DAVIDSON COUNTY CHANCERY COURT
THE HONORABLE CAROL L. MCCOY, CHANCELLOR

Larry D. Woods; Woods & Woods of Nashville
For Appellee

John Knox Walkup, Attorney General and Reporter
Eugenie B. Whitesell, Assistant Attorney General
For Appellants

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILARD, JUDGE**

     This appeal involves a petition of Petitioner/Appellee J.H. Moser (Moser) for judicial review of decisions of the Tennessee Civil Service Commission (CSC) and the Tennessee Department of Transportation (DOT).

**Facts**

Moser, a highway maintenance worker employed by the DOT since 1987, was transferred from Monroe County to Knox County in 1995. Moser's job classification was not altered. Following the guidelines set forth in T.C.A. § 8-30-328 (1993) and Tenn. Dep't. Personnel R. 1120-11-.05 (1994), Moser filed a grievance seeking a Level IV hearing with the agency, DOT, alleging that the transfer was motivated by his political beliefs. The DOT denied his request for transfer back to Monroe County, reasoning that an involuntary transfer of less than fifty miles is not a grievable matter under Tenn. Dept. Personnel R. 1120-11-.07. Moser next requested a Level V hearing with the CSC. Moser contended that he was entitled to a hearing under statutory and constitutional law regardless of the geographical length of his transfer. By letter dated October 30, 1995, the CSC also denied Moser's request for a hearing, based on the fifty mile transfer rule.

Moser filed this petition for judicial review in Davidson County Chancery Court on February 8, 1996. Moser sought review pursuant to the Uniform Administrative Procedures Act (UAPA), T.C.A. §§ 4-5-101 et seq. (1991 & Supp. 1997), or, alternatively, relief pursuant to 42 U.S.C. §§ 1983 et seq.. In May of 1996, the trial court granted respondents' Motion for Partial Dismissal and dismissed the 42 U.S.C. § 1983 claim without prejudice. On December 10, 1996, the trial court entered an order remanding the matter to the CSC to allow Moser to pursue his grievance through of a Level V hearing. The trial court found that Moser was entitled to a hearing pursuant to Tenn. Dep't. Personnel R. 1120-11-.07(9). From this order, the respondents appeal.

On appeal, the respondents contend that the trial court did not have jurisdiction to review the agencies' decisions. Respondents also insist that the UAPA does not afford a state employee the right to grieve a transfer of less than fifty miles even if the employee alleges that the transfer was politically motivated.

**Judicial Review Pursuant to the UAPA**

The UAPA provides two methods of review of decisions rendered by an agency: 1) a declaratory judgment proceeding in accordance with T.C.A. § 4-5-225 (Supp. 1997); and 2) judicial review of contested cases in accordance with T.C.A. § 4-5-322 (Supp. 1997). *Morris v. Correctional Enters. of Tenn.*, No. 01A01-9612-CH-00543, 1997 WL 671988, *3-4 (Tenn.

App. Oct. 29, 1997). Moser's petition was brought pursuant to the latter provision. In both instances, the petition shall be filed in chancery court of Davidson County. T.C.A. §§ 4-5-225 (a) & 4-5-322 (b)(1). Tennessee Code Annotated § 4-5-322 (a)(1) provides judicial review to a person aggrieved by a "final decision in a contested case." According to T.C.A. § 8-30-328 (a)(7)(1993):

> The final step of this grievance procedure for regular employees shall be a request for review to the commission, and all decisions by the commission upon such requests for review shall be final.
> . . .

A "contested case" is defined as follows:

> "Contested case" means a proceeding, including a declaratory proceeding, in which the legal rights, duties or privileges of a party are required by any *statute or constitutional provision* to be determined by an agency after an opportunity for a hearing. . . .

*Id.* § 4-5-102 (3) (1991) (emphasis added).

The respondents contend that the trial court did not have jurisdiction to review the administrative proceedings, since the instant case does not qualify as a "final decision in a contested case." *Id.* § 4-5-322 (a)(1). *See id.* § 4-5-102 (3).

The seminal issue is the grievability of Moser's complaint and as to the dispute over grievability, the rules provide: "Disputes over grievability may be resolved by an agency's appointing authority or by the Commissioner. The Civil Service Commission may review such determination and, at its discretion, take whatever action it deems appropriate." Tenn. Dep't. Personnel. R. 1120-11.09(3). Implicitly such a final decision by the CSC is reviewable pursuant to the statute because the resolution of the issue requires a determination of whether a statutory, regulatory, or constitutional provision entitles Moser to a grievance hearing.

**Statutory and Regulatory Entitlements**

The Tennessee Civil Service Act, T.C.A. §§ 8-30-101 et seq. (1993 & Supp. 1997), governs the conditions of employment with the State of Tennessee. The Act delegates to the Department of Personnel the authority to establish a grievance procedure. T.C.A. §§ 8-30-201 thru 205. The CSC was formed as part of the Department of Personnel, T.C.A. § 8-30-102, and given the power to serve as the "final step in the grievance procedure" for state employees. *Id.* § 8-30-108 (2).

In accordance with authority granted under T.C.A. § 8-30-328 (a)(1), the Department of

Personnel has promulgated rules and regulations governing the grievance process. Tennessee Department Personnel Rule 1120-11-.07 lists the following as "grievable matters":

(1) Disciplinary suspension or demotion.
(2) Disciplinary dismissal.
(3) Involuntary geographical transfer of an employee more than fifty (50) miles.
(4) Transfer of official duty station more than fifty (50) miles.
(5) Non-compliance with an approved reduction in force plan by an appointing authority.
(6) Prohibited political activity as outlined in *T.C.A.* Title 2, Chapter 19 ("Little Hatch Act").
(7) Coercion of an employee to "waive" his right to consideration on a certificate of eligibles.
(8) Performance evaluations under certain circumstances to the fourth step.
(9) Other matters within the discretion or control of the appointing authority or the Commission.

We first decide whether the trial court correctly determined that subsection (9), "the catch-all," affords Moser a right to a hearing.[1] The trial court's order cites Tenn. Dep't. Personnel R. 1120-2-.13(1)(a), which permits an appointing authority to transfer an employee with the approval of the Commissioner of Personnel. The trial court's order also cites T.C.A. § 8-30-221 for the proposition that the appointing authority and the Commissioner must base their transfer decisions on an employee's merit rather than on the employee's political beliefs. Therefore, the trial court held that all career employees are "entitled to grieve a transfer alleged to be politically motivated."

Respondents argue for a more narrow interpretation of subsection (9). Respondents contend that the purpose of the provision is to give the appointing authority and the CSC flexibility to consider other matters to be grievable solely at their discretion. Respondents maintain that the fifty mile radius limitation imposed under subsections (3) & (4) would be a nullity if an employee is entitled to a hearing for *any* grievance arising from an action taken within the control and discretion of an appointing authority. Respondents further contend that the trial court's reliance on T.C.A. § 8-30-201(a) and § 8-30-221 is misplaced. According to the

---

[1]In Moser's petition for judicial review, he contends that he was transferred to a point beyond fifty miles so that subsections 93) and 94) affirmatively guarantee him a hearing. The petition, however, states that he was transferred to "a point out of county slightly less than 50 miles in the beginning and then moved . .. to a point more than 50 miles." The record does not indicate the time period between these transfers. The trial court implicitly found that the transfer was less than fifty miles, and Moser does not appeal this finding. Therefore, we need not address whether Moser was entitled to a hearing under Tenn. Dep't. Personnel R. 1120-11-.07(3) or (4).

respondents, these provisions are merely directory in nature and do not confer a right to relief under the grievance procedures.

The commissioner of personnel has the duty to prescribe rules and regulations for the administration and execution of the personnel statutory provision, which rules shall have the force and effect of law. T.C.A. § 8-30-202 (a)(6)(A) & § 8-30-205. The primary rule of statutory construction is that the intention of the legislative body must prevail, *Dingman v. Harvell*, 814 S.W.2d 362, 366 (Tenn. App. 1991), and this intent is ascertained primarily from the natural and ordinary meaning of the language used. *Steele v. Ft. Sanders Anesthesia Group, P.C.*, 897 S.W.2d 270, 280 (Tenn. App. 1994).

Respondents assert that the trial court interpreted personnel rule 1120-11-.07(9) as applying to the actual act which is the basis of the grievance, i.e., Moser's transfer. The trial court's memorandum and order states: "Since the appointing authority makes the transfer decisions, and such decisions may not be based on politics, any employee who is a career employee is entitled to grieve a transfer alleged to be politically motivated." If the respondents' assertion is correct, we would respectfully disagree with the trial court's interpretation. First, we note that Rule 1120-11-.07 lists specific grievable matters followed by subsection (9) which states "other matters within the discretion or control of the appointing authority or commission." It seems clear that subsection (9) is talking about other grievable matters and not discretionary acts on the part of the appointing authority in performance of the actual act which is the basis of the grievance. This is made even more clear by the fact that Moser's transfer was entirely within the control of the appointing authority with approval of the Commissioner of Personnel. The commission (CSC) would have no part in making such a decision. Yet, subsection (9) provides for other matters within the control of the appointing authority *or the commission*. Obviously, the discretion referred to is not the discretion in the original act which created the grievance but is a catch-all provision to allow the appointing authority or the commission, depending upon who is called upon to act, to determine in their discretion that some matters not specifically set out in the rules should be grievable.

Under certain circumstances, there could be an abuse of discretion on the part of the appointing authority or the commission in making a determination of whether a nonspecified matter is grievable. Under those circumstances we believe the standard to measure exercise of discretion should be the same as for a trial court in the performance of its discretionary duties. In *Ballard v. Herzke*, 924 S.W.2d 652 (Tenn. App. 1996), our Supreme Court sa

> Discretion denotes the absence of a hard and fast rule. When invoked as a guide for judicial action, it requires that the trial court view the factual circumstances in light of the relevant legal principles and exercise considered discretion before reaching a conclusion. Discretion should not be arbitrarily exercised. The applicable facts and law must be given due consideration. An

5

> appellate court should not reverse for "abuse of discretion" a discretionary judgment of a trial court unless it affirmatively appears that the trial court's decision was against the logic or reasoning, and caused an injustice or injury to the party complaining.

*Id*. at 661 (citations omitted).

The trial court correctly noted that state agencies are prohibited from basing employment decisions on the political beliefs of employees. T.C.A. § 8-30-201 (a) & § 8-30-221. Respondents contend that these statutory provisions do not entitle an employee to challenge the personnel action under the grievance procedure outlined in UAPA. We must respectfully disagree.

A state employee, after completing a probationary period, has a property right in his or her position. T.C.A. § 8-30-331 (1993). This property right could reasonably be construed to include the geographical location of the employment.

Moser contends that he has a property interest in employment in Monroe County, and that the transfer without a hearing violated his constitutional due process rights. In ***Rutan v. Republican Party of Illinois***, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Supreme Court held:

> We therefore determine that promotions, transfers, and recalls after layoff based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees.

*Id*. 497 U.S. at 75, 110 S.Ct. at 2737.

The record in this case reflects that Moser was not afforded minimum due process. The Commissioner did not properly exercise its discretion under personnel rule 1120-11-.07(9). Under the peculiar facts of this case, Moser should have been granted a grievance hearing pursuant to this rule.

Accordingly, the judgment of the trial court is affirmed, and the case is remanded to the Civil Service Commission for proceedings consistent with this opinion. Costs of the appeal are assessed against the respondents. We pretermit Moser's alternative issues.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**