IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 20, 2004 Session

## MONTE PANITZ, ET AL. v. F. PERLMAN & COMPANY, INC., ET AL.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. CH-03-0640-1     The Honorable Walter Evans, Chancellor**

------------

**No. W2003-01958-COA-R3-CV - Filed October 4, 2004**

------------

Shareholders seek to inspect certain records of corporation of which they are shareholders, as well as records of two other corporations ("the subsidiaries"): a second corporation which is the wholly-owned subsidiary of the corporation in which Plaintiffs hold shares, and another that is the wholly owned-subsidiary of the second corporation. Defendants maintain that plaintiffs do not have any right to inspect the records of corporations in which they are not shareholders, but agreed to allow inspection of limited records of two subsidiaries as a courtesy, contingent upon plaintiffs signing a confidentiality agreement. Plaintiffs maintain that they have an unqualified right to inspect records of all three corporations under T.C.A. 48-26-102. The trial court found that the confidentiality agreement was reasonable and entered an order requiring defendants to produce certain records, dating back to 1991, for inspection and copying. It further held that, in light of defendants' agreement to allow limited inspection of records of subsidiaries, it need not rule on issue of whether plaintiffs were entitled to inspect records of subsidiaries. We affirm as modified herein.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

John Andre Chiapella of Memphis For Appellants, Monte Panitz and Barry Panitz

Leo Bearman, Jr. and Maurice Wexler of Memphis For Appellees, F. Perlman & Company, Inc., Alan Perlman, Neil Cohen, Michael Wexler, Southern Steel Supply Company, Inc. and American Metal Sales, Inc.

**OPINION**

**I. BACKGROUND**

Appellants, Monte Panitz and Barry Panitz, are shareholders of F. Perlman & Company ("Perlman and Co."). Perlman & Co. is the sole owner of Southern Steel Supply Company, Inc. ("Southern Steel"), and Southern Steel is the sole owner of American Metal Sales, Inc. ("American Metal"). Appellants are not shareholders of Southern Steel or American Metal.

On May 20, 2002, John Andre Chiapella, attorney for the Panitzes, demanded, by letter, "to inspect the records of the corporation and its subsidiaries .... to ascertain whether any breach of fiduciary duty has occurred with regard to the directors or officers of the corporation or its subsidiaries." On June 13, Chiapella followed up with a more specific letter, demanding to inspect, "to the extent not previously inspected on July 5, 2002," the following:

1. Charter and any amendments thereto from inception of said corporations to present;

2. Bylaws and any amendments thereto from inception of said corporations to present;

3. Any and all minutes from inception of said corporations to present; and

4. Total compensation paid to each and every officer for the last ten (10) years from each of the foregoing corporations.

Chiapella concluded his June 13 letter by stating the Plaintiffs' purposes in requesting the records:

The purposes for which the inspection of records are hereby demanded are to aid the shareholders in their determination of whether the business of each corporation is being properly conducted and whether there has been any breach of fiduciary duty by any director or officer of the corporations.

We are in the process of hiring a forensic auditor to assist us in inspect[ing] the financial records of the corporations. Once accomplished, we will make demand with respect to the appropriate financial records.

In a letter to Chiapella dated July 3, 2002, Leo Bearman, Jr., attorney for Perlman & Co. agreed to allow, "as a courtesy to you," the inspection of certain of the records requested by the Panitzes, while maintaining that the Panitzes, not being shareholders of Southern Steel or American Metal, were not entitled to the information sought. Specifically, Perlman & Co.'s counsel offered to make available the following records for inspection:

1. A list of the officers and members of the Board of Directors of F. Perlman & Company, Inc. dating back to October 14, 1996 (enclosed).

2. A list of the officers and board of Directors of Southern Steel Supply Company, Inc. dating back to June, 1994 (enclosed).

3. A list of the officers and directors of American Metal Sales, Inc. dating back to June, 1994 (enclosed).

4. A. To the extent they are readily available, copies of the minutes of Southern Steel Supply Company, Inc. and American Metal Sales, Inc. from 1991, to the present. You may review these in my office at your convenience. We have already supplied copies of the minutes of F. Perlman & Company, Inc.

   B. A list of the total compensation by way of salaries and bonuses paid to Frank Perlman, Joe Williams, Neil Cohen, Michael Wexler, Gary McKibben, Alan Perlman, Barry Panitz, and Monte Panitz from 1997 to date.

   C. The information listed in paragraphs 4.A. and 4.B. will be supplied to you after you and your clients execute a Confidentiality Agreement, a copy of which I enclose. We feel that individual compensation, as well as the content of all corporate minutes are indeed confidential, non-public, proprietary matters and, therefore, believe that this is a reasonable request.

The confidentiality agreement referenced by Bearman in item 4 C. of his July 3, 2002 letter reads as follows:

You have demanded inspection of records of F. Perlman & Company, Inc. ("F. Perlman") on behalf of your clients, Monte Panitz, Barry Panitz and the Estate of Izzy Panitz. The purpose which you have stated for demanding the inspection of records is to aid your clients as shareholders of F. Perlman in a determination of whether the business of F. Perlman and its subsidiaries is being properly conducted and whether there has been a breach of fiduciary duty by any director or officer of F. Perlman or its subsidiaries. The records which you have requested include non-public information. F. Perlman is willing to provide such non-public information if it receives appropriate assurances of confidentiality and that the information will only be used by either you or your clients for the stated purposes.

Accordingly, the terms and conditions of this Confidentiality Agreement (the "Agreement") are as follows:

1. Provision of Confidential Information. Pursuant to your letters of May 20, 2002 and June 13, 2002, you have requested information concerning F. Perlman and

its subsidiaries that F. Perlman considers non-public, proprietary, or confidential in nature. All such information, whether having been previously provided, presently provided, or provided in the future is hereby collectively referred to as "Confidential Information". F. Perlman is willing to disclose and provide such Confidential Information to you upon the terms and conditions set forth in this letter.

2.      Acknowledgment of Confidentiality. You and your clients recognize and acknowledge the non-public and proprietary nature of the Confidential Information, and that damage could result to F. Perlman if any of the Confidential Information is disclosed to a third party. By receiving the Confidential Information from F. Perlman, you and your clients agree that any and all information may be furnished to you by F. Perlman's officers, directors, employees or legal, accounting or other professional representatives will be used solely for the above stated purposes.

3.      Use of Confidential Information. You and your clients agree to maintain the confidentiality of the Confidential Information and not to disclose such to any persons whatsoever, excepting only (I) persons to whom such disclosure is required by legal process (but only after notifying F. Perlman of their receipt of such process and giving F. Perlman an opportunity to seek such protection and protective orders as F. Perlman may undertake to obtain); (ii) such other persons to whom disclosure is approved in writing by F. Perlman; (iii) to your employees and agents pursuant to the above stated purposes and subject to the same terms and conditions; and (iv) in any judicial proceedings alleging a claim of your clients against F. Perlman.

4.      Other Provisions. This Agreement shall be binding upon you and your clients and your respective successors, and assigns. This Agreement may be amended only by a writing signed by the parties hereto.

The undersigned agree to and accept the above-stated terms and conditions as of this _____ day of _____, 2002.

_____
JOHN ANDRE CHIAPELLA
Attorney for Monte Panitz, Barry Panitz and
the Estate of Izzy Panitz


_____
MONTE PANITZ


_____
BARRY PANITZ


-4-

THE ESTATE OF IZZY PANITZ<br>
By: _____<br>
Title: _____

Neither the Panitzes nor Chiapella signed the Confidentiality Agreement. On April 4, 2003, the Panitzes filed a "Petition for Order Requiring Defendants to Produce Records for Inspection and Copying," naming as defendants, F. Perlman & Company, Inc., Allan Perlman, Neil Cohen, Michael Wexler, Southern Steel Supply Company, Inc., and America Metal Sales, Inc. The petition also attaches as exhibits the above-referred letters dated May 20, 2002, June 13, 2002, and July 3, 2002, with a copy of a proposed confidentiality agreement and letters dated July 30, 2002 and May 31, 2002.. The petition states, in relevant part:

8.      The defendants have complied in part with plaintiffs' request but have refused to furnish records of [Southern Steel and American Metal] and have refused to produce other records demanded by plantiffs unless plaintiffs and their attorney sign a "Confidentiality Agreement."

9.      Plaintiffs state that they are entitled to the records they have demanded, and that they have complied with T.C.A. Section 48-26-102, Subsection c, in (1) that their demand is made in good faith for a proper purpose; (2) they have described with reasonable particularity their purpose and the records they desire to inspect and (3) the records are directly connected with their purpose.

10.      The purposes for the inspection of these records are to aid plaintiffs in determining (1) whether the business of each corporation is being properly conducted, (2) whether there has been any breach of fiduciary duty by any Director or officer of each corporation and (3) the value of plaintiffs interests in F. Perlman & Company, Inc.

11.      Plaintiffs have no other adequate or specific remedy for the relief herein sought except that provided in T.C.A. Sections 48-26-101 – 48-26-201.

PREMISES CONSIDERED, PLAINTIFFS PRAY:

1.      That a copy of this petition be served upon the defendants, and that the Court enter an order requiring the defendant corporations, through their President, Chairman of the Board of Directors and/or Secretary-Treasurer, to produce the records demanded of F. Perlman & Company, Inc., and the records of its two wholly owned subsidiaries, for inspection and copying by plaintiffs, their agents and/or attorney as provided by Sections 48-26-101 – 48-26-201.

On April 4, 2003, a Fiat was issued ordering that the Clerk of the Court issue notice to Perlman & Co., Alan Perlman, Chairman of the Board of Directors, Neil Cohen, President, and

Michael Wexler, Secretary-Treasurer, to appear in court on Tuesday, May 6, 2003, for a hearing on the petition of the Panitzes to show cause why they should not produce the following records of F. Perlman & Co. and its wholly owned subsidiaries, for inspection and copying:

1.    Charter and any amendments thereto from the inception of said corporations to the present less charter of F. Perlman & Company, Inc. as of June 3, 2002.

2.    By-Laws and amendments thereto from the inception of said corporations to the present less by-laws of F. Perlman & Company, Inc. as of June 3, 2002.

3.    Any and all minutes from the inception of said corporations to the present less minutes of F. Perlman & Company, Inc. for the period February 18, 1991 through December 6, 2001.

4.    Total compensation paid to each and every officer for the last 10 years from each of the foregoing corporations.

The Appellees filed an answer on April 16, 2003; a First Amended and Supplemental Answer on April 29, 2003; and a Second Amended and Supplemental Answer on May 6, 2003.

A hearing was held on May 6, 2003. On June 27, 2003, the court entered an Order Requiring Defendants to Produce Records For Inspection and Copying Subject to Protective Order. The order reads, in relevant part:

> The Court, it not being necessary to do so, declines to decide the question of whether or not Plaintiffs, who are not shareholders of either Southern Steel Supply Company, Inc. or American Metal Sales, Inc., are entitled to demand certain records of those corporations. However, as a result of being advised of the previous offer made by Defendants' counsel to produce certain records to Plaintiffs under certain conditions;
>
> IT IS ORDERED, ADJUDGED AND DECREED that Defendants Southern Steel Supply Company, Inc. and American Metal Sales, Inc. shall make available to Plaintiffs for inspection and copying, to the extent that they are available, copies of the minutes of Southern Steel Supply Company, Inc. and American Metal Sales, Inc. from 1991 to the present, and copies of the charter and by-laws of the two corporations.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants F. Perlman & Company, Inc., Southern Steel Supply Company, Inc. and American Metal Sales, Inc. shall supply to Plaintiffs a list of the total compensation by way of salaries and bonuses paid to Frank Perlman, Joe Williams, Neil Cohen, Michael Wexler, Gary McKibben, Alan Perlman, Barry Panitz and Monte Panitz from 1991 to the present, to the extent that such information is available.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the said Defendants shall supply the information set out above on condition that Monte Panitz, Barry Panitz and Barry Panitz, Trustee of the Izzy Panitz Credit Shelter Trust, execute a Confidentiality Agreement identical to that affixed to the petition filed in this matter and dated July 3, 2002, the court specifically finding that said Confidentiality Agreement is reasonable and that its execution constitutes a condition to Plaintiffs receiving access to the information set out above. Defendants Southern Steel Company, Inc. and American Metal Sales, Inc. shall make said material and information available to Plaintiffs within thirty days of the delivery to counsel for Defendants of the fully executed Confidentiality Agreement approved herein.

The Panitzes filed their Notice of Appeal on July 28, 2003.

## II. STANDARD OF REVIEW

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below and there is no presumption of correctness with respect to the trial court's conclusions of law. ***Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996)** and Tenn. R. App. P. 13(d). The trial court's factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. ***Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993)**.

## III. ISSUES FOR REVIEW

1. Whether the order entered June 27, 2003, of the Chancery Court of Shelby County, Tennessee ("Chancery Court") denying the Appellants, shareholders and members of the board of directors of F. Perlman & Company, Inc. ("Perlman & Company") the right to inspect **ALL** the minutes and by-laws of Perlman & Company and its subsidiaries and allowing the Appellants only the right to inspect such records for the period commencing after 1991 was error.

2. Whether the Chancery Court erred in denying the Appellants as directors of Perlman & Company the right to inspect the records of Perlman & Company and its subsidiaries.

3. Whether the Confidentiality Agreement which the Chancery Court required the Appellants to sign prior to inspection of the records of Perlman & Company and its subsidiaries was a reasonable restriction pursuant to Tenn. Code Ann. § 48-26-104(d).

4. Whether the Chancery Court in its order of June 27, 2003 erred in allowing the Appellants to procure records only to the extent available as initially determined by Appellees without stating what records were not available and the reasons for such unavailability.

5. Whether the refusal of the Chancery Court to make Finding of Facts was error.

## IV. ANALYSIS

Issue 1: Whether the order entered June 27, 2003, of the Chancery Court of Shelby County, Tennessee ("Chancery Court") denying the Appellants, shareholders and members of the board of directors of F. Perlman & Company, Inc. ("Perlman & Company") the right to inspect **ALL** the minutes and by-laws of Perlman & Company and its subsidiaries and allowing the Appellants only the right to inspect such records for the period commencing after 1991 was error.

The Panitzes contend that they are entitled, by virtue of T.C.A. 48-26-101 and T.C.A. 48-26-102, to inspect the records of not only F. Perlman & Co., but also American Metal and Southern Steel. The pertinent statutes read as follows:

**§ 48-26-101. Required records.**

(a) A corporation shall keep as permanent records minutes of all meetings of its shareholders and board of directors, a record of all actions taken by the shareholders or board of directors without a meeting, and a record of all actions taken by a committee of the board of directors in place of the board of directors on behalf of the corporation.

(b) A corporation shall maintain appropriate accounting records.

(c) A corporation or its agent shall maintain a record of its shareholders, in a form that permits preparation of a list of the names and addresses of all shareholders, in alphabetical order by class and series, if any, of shares showing the number, class, and series, if any, of shares held by each shareholder.

(d) A corporation shall maintain its records in written form or in another form capable of conversion into written form within a reasonable time.

(e) A corporation shall keep a copy of the following records at its principal office:

(1) Its charter or restated charter and all amendments thereto currently in effect;

(2) Its bylaws or restated bylaws and all amendments to them currently in effect;

(3) Resolutions adopted by its board of directors creating one (1) or more classes or series of shares, and fixing their relative rights, preferences, and limitations, if shares issued pursuant to those resolutions are outstanding;

(4) The minutes of all shareholders' meetings, and records of all action taken by shareholders without a meeting, for the past three (3) years;

(5) All written communications to shareholders generally within the past three (3) years, including any financial statements prepared for the past three (3) years under § 48-26-201;

(6) A list of the names and business addresses of its current directors and officers; and

(7) Its most recent annual report delivered to the secretary of state under § 48-26-203.

1986 Pub.Acts, c. 887, § 16.01.


### § 48-26-102. Shareholders right to inspect and copy records.

(a) A shareholder of a corporation is entitled to inspect and copy, during regular business hours at the corporation's principal office, any of the records of the corporation described in § 48-26-101(e), if the shareholder gives the corporation written notice of the shareholder's demand at least five (5) business days before the date on which the shareholder wishes to inspect and copy.

(b) A shareholder of a corporation is entitled to inspect and copy, during regular business hours at a reasonable location specified by the corporation, any of the following records of the corporation, if the shareholder meets the requirements of subsection (c) and gives the corporation written notice of the shareholder's demand at least five (5) business days before the date on which the shareholder wishes to inspect and copy:

(1) Excerpts from minutes of any meeting of the board of directors, records of any action of a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders, and records of action taken by the shareholders or board of directors without a meeting, to the extent not subject to inspection under subsection (a);

(2) Accounting records of the corporation; and

(3) The record of shareholders.

(c) A shareholder may inspect and copy the records described in subsection (b) only if:

(1) The shareholder's demand is made in good faith and for a proper purpose;

(2) The shareholder describes with reasonable particularity the shareholder's purpose and the records the shareholder desires to inspect; and

(3) The records are directly connected with the shareholder's purpose.

(d) The right of inspection granted by this section may not be abolished or limited by a corporation's charter or bylaws.

(e) This section does not affect:

(1) The right of a shareholder to inspect records under § 48-17-201 or, if the shareholder is in litigation with the corporation, to the same extent as any other litigant; or

(2) The power of a court, independently of chapters 11-27 of this title, to compel the production of corporate records for examination.

1986 Pub.Acts, c. 887, § 16.02.

The crux of the Panitzes' argument is that under T.C.A. 48-26-102, their status as shareholders of the parent or holding corporation, F. Perlman & Co., entitles them to inspect the records of the subsidiary corporations, American Metal and Southern Steel, even though the Panitzes are not shareholders of these subsidiaries. Appellees contend that the statute is clear on its face, and grants shareholders of a corporation the right to inspect the records of that corporation and no other.

We begin by noting that the plain language of the statute appears to grant the right to inspect a corporation's records only to the shareholders of that corporation itself—not to the shareholders of the parent corporation. Section (a) of the statute refers to the right of "[a] shareholder of a corporation ... to inspect and copy ... the records of *the* corporation ...." (emphasis added). Similar language appears in section (b). Quite plainly, the statute refers only to the right of shareholders of a corporation to inspect and copy the records of the same corporation, and does not grant that right to shareholders of one corporation to inspect the records of a second corporation, even when the second corporation is wholly-owned by the first corporation or by a subsidiary of the first corporation.

The primary rule of statutory construction is that the intention of the legislative body must prevail. See *Gragg v. Gragg*, **12 S.W.3d 412 (Tenn.2000)**; *Moser v. Department of Transportation*, **982 S.W.2d 864 (Tenn.Ct.App.1998)**. When the language of a statute is unambiguous, legislative intent is to be ascertained from the plain and ordinary meaning of the statutory language. The role of courts in interpretation of legislation is succinctly stated in *Gleaves v. Checker Cab Transit Corp., Inc.*, **15 S.W.3d 799 (Tenn.2000)**:

> When ... a statute is without contradiction or ambiguity, there is no need to force its interpretation or construction, and courts are not at liberty to depart from the words of the statute. *Hawks v. City of Westmoreland*, **960 S.W.2d 10, 16 (Tenn.1997)**. Moreover, if "the language contained within the four corners of a statute is plain, clear, and unambiguous, the duty of the courts is simple and obvious, 'to say sic lex scripta, and obey it.' " *Id.* (quoting *Miller v. Childress*, **21 Tenn. (2 Hum.) 320, 321-22 (1841)**). Therefore, "[i]f the words of a statute plainly mean one thing they cannot be given another meaning by judicial construction." *Henry v. White*, **194 Tenn. 192, 198, 250 S.W.2d 70,72 (1952)**.
>
> Finally, it is not for the courts to alter or amend a statute. *See* **Town of Mount Carmel v. City of Kingsport, 217 Tenn. 298, 306, 397 S.W.2d 379, 382 (1965)**; *see also Richardson v. Tennessee Bd. of Dentistry*, **913 S.W.2d 446, 453 (Tenn.1995)**; *Manahan v. State*, **188 Tenn. 394, 397, 219 S.W.2d 900, 901 (1949)**. Moreover, a court must not question the "reasonableness of [a] statute or substitut[e][its] own policy judgments for those of the legislature." *BellSouth Telecomms., Inc. v. Greer*, **972 S.W.2d 663, 673 (Tenn.Ct.App.1997)**. Instead, courts must "presume that the legislature says in a statute what it means and means in a statute what it says there." *Id.* Accordingly, courts must construe a statute as it is written. *See Jackson v. Jackson*, **186 Tenn. 337, 342, 210 S.W.2d 332, 334 (1948)**.

*Id.* at 803.

We find, therefore, under the plain language of the statute, the Panitzes do not have the right to inspect the records of two companies of which they are not shareholders, American Metal and Southern Steel.

In urging a different conclusion upon us, the Panitzes, in their brief on appeal, argue that T.C.A. 48-26-102 was passed by the legislature to prevent the oppression of minority shareholders by majority shareholders, who "enjoyed the economic benefits of the corporation through compensation, contracts with related parties, and corporate perks, etc., while paying no dividends. The minority shareholders ... would then expend time, energy and, most importantly, money, to compel inspection of corporate records."

The Panitzes may well be correct in their explanation of the impetus behind the passage of T.C.A. 48-26-102, but such legislative history is irrelevant to the sole question concerning this statute: whether their status as shareholders of a parent corporation entitles them to inspect the books of the corporation's subsidiaries. The Panitzes, surprisingly, do not directly address this question in their appeal brief, nor do they direct this Court to any Tennessee case law supporting their position that the statutory right of inspection extends to a corporation that is a wholly-owned subsidiary of the corporation of which they are shareholders. Nor is there any proof in the record that tends to suggest that the subsidiaries are mere alter egos of the parent corporations.[1]

The Panitzes *do* have the right to inspect *all* the records pertaining to F. Perlman & Co. itself, in light of they fact that they have made the showing of good faith and proper purpose set out in T.C.A. 48-26-102(c)[2]. T.C.A. 48-26-101 imposes upon corporations the obligation to keep certain records permanently, including the minutes of corporate meetings, and the same statute requires the

---

[1] We note that some courts in our sister states have found that a shareholder's right to inspect the records of a corporation may, under some circumstances, extend to wholly-owned subsidiaries of that corporation. But a shareholder's right to inspect the records of a subsidiary will only be found when, in the words of one court, "the subsidiary is in fact the mere alter ego of the parent or that fraud has occurred." *South Side Bank v. T.S.B. Corp.*, **419 N.E.2d 477, 479 (Ill.Ct.App. 1981)**. *See also* *State ex rel. Brown v. III Investments, Inc.*, **80 S.W.3d 855 (Mo.Ct.App. 2002).** As Appellees correctly note, "[t]here is not even an allegation in Plaintiffs' petition, much less any proof in the record, to support a conclusion that either American Metal Sales, Inc. or Southern Steel Supply Metal Sales, Inc. is the alter ego or instrumentality of F. Perlman & Company, Inc." Therefore, we need not consider this question.

[2] The right of shareholders to inspect corporate minutes and accounting records is contingent upon a showing of good faith and proper purpose, under T.C.A. 48-26-102(c), which reads:

A shareholder may inspect and copy the records described in subsection (b) only if:

(1) The shareholder's demand is made in good faith and for a proper purpose;
(2) The shareholder describes with reasonable particularity the shareholder's purpose and the records the shareholder desires to inspect; and
(3) The records are directly connected with the shareholder's purpose.

It is uncontested by Appellees that the Panitzes had good faith and a proper purpose in seeking the records at issue in this dispute.

maintenance of "appropriate accounting records." We therefore find that, with respect to the chancery court's order concerning the records of F. Perlman & Co., it was error for the court to limit the obligation of disclosure to records dating only to 1991. Therefore, we find that the chancery court did not err in failing to find that the Panitzes have a right to inspect the records of American Metal and Southern Steel. To the extent that the chancery court's order pertains to F. Perlman & Co., we find that the court erred in limiting the obligation of disclosure to records dating from 1991 to present.

**Issue 2.** *Whether a director of a corporation is entitled to inspect and copy all of the minutes of the meetings of the board of directors of such a corporation and its controlled subsidiaries.*

The second issue on appeal is whether the Panitzes, as directors of F. Perlman & Co., have the right to inspect the records of subsidiary corporations, pursuant to their fiduciary duty to the shareholders of the parent corporation. In their appeal brief, the Panitzes argue, "[i]n order for the Appellants to perform their respective fiduciary duties each must have absolute access to the records of the corporation."

The Panitzes did not seek this relief in their petition, nor did they raise this issue at trial. Generally, issues not raised at trial may not be raised for the first time on appeal. *State Dept. of Human Services v. Defriece*, 937 S.W.2d 954, 960 (Tenn.Ct.App.1996) (citing *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 153 (Tenn.1991); *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn.1983)). Because the Panitzes failed to raise this issue at trial, we decline to consider it on appeal.

**Issue 3.** *Whether the confidentiality agreement required to be signed by the appellants is reasonable.*

The third issue on appeal is whether the chancery court erred in finding that the confidentiality agreement that the Panitzes and their counsel were required to sign was reasonable. Appellants contend that the confidentiality agreement is unreasonable, as they explain in their appeal brief:

> [I]t failed to exclude the following information which was deemed confidential: (1) information previously known to Appellants; (2) information independently developed by Appellants; (3) information acquired from a third party not under an obligation to Appellees not to disclose; and (4) information found in the public domain.

Appellees disagree with Appellants' characterization of the confidentiality agreement, and assert that "'confidential information' ... is not defined to include that information previously known to Appellants, information previously developed by Appellants, information acquired from a third party not under obligation to Appellees not to disclose, or information found in the public domain."

-13-

The confidentiality agreement, in the final form that the court ordered Appellants to sign as a condition of inspecting the corporate records, states in relevant part:

> The undersigned ... have requested information concerning [F. Perlman, Southern Steel, and American Metal] which those corporations consider non-public, proprietary, or confidential in nature. All such information, whether having been previously provided, presently provided, or provided in the future pursuant to Decree of Chancery Court in cause no. CH-03-0640-1, is hereby collectively referred to as "Confidential Information."

The agreement could reasonably be read to include information that should be excluded for the four reasons Appellants cite in the passage cited from their appeal brief, supra. We agree with the Panitzes that the confidentiality agreement is overbroad or at least ambiguous.

Therefore, we find that the confidentiality agreement the chancery court ordered the appellants to sign as a condition of inspecting the corporate records is unreasonable. We order that the agreement be modified to provide explicitly for the exclusion of the following types of information from the scope of the confidentiality agreement:

(1) Information previously known to Appellants;

(2) Information independently developed by Appellants;

(3) Information acquired from a third party not under an obligation to Appellees not

to disclose; and

(4) Information found in the public domain.

We further find that the execution of the agreement, so revised, will be a reasonable condition of inspection of the records at issue in this case.

**Issue 4.**        *Whether the chancery court erred in ordering that documents be made available to appellants "to the extent ... available."*

The next issue on appeal is whether the chancery court erred in ordering that documents, encompassed in the offer made by Appellees, be disclosed "to the extent ... available." With respect to the information relating to American Metal and Southern Steel, we believe that the court did not err in ordering that such information be provided "to the extent available." As we found *supra*, in our discussion of Issue 1, the Panitzes have not shown that they are entitled to inspect *any* records of American Metal or Southern Steel. Therefore, it is reasonable for the trial court to limit the Appellees' obligation to provide such information, as being "to the extent available."

With respect to the information to which the Panitzes are clearly entitled—i.e., the corporate records of F. Perlman & Co. encompassed by T.C.A. 48-26-101 and 48-26-102—we agree that they are entitled to inspect *all of the* records of F. Perlman & Co. encompassed by T.C.A. 48-26-101 and 48-26-102. Therefore, we find that the modifier used by the chancery court in its order, "to the extent available," suggests some degree of discretion on the part of the Appellees as to what they will provide to the shareholders. Such a condition is inconsistent with the plain language of the statute.

Since the record contains no suggestion that any information to which the Panitzes are entitled is, in fact, unavailable, we need not reach the question of what remedy the Panitzes will have if such information is not made available to them by the Appellees. Therefore, we modify the chancery court's order to reflect that F. Perlman & Co. has an unqualified obligation to make its records, encompassed by T.C.A. 48-26-101 and 48-26-102, available for inspection.

***Issue 5.*** *Whether the chancery court erred in denying appellants' motion for findings of fact.*

The fifth and final issue on appeal is whether the chancery court erred in denying the Panitzes' motion for findings of fact. We first note that no evidentiary hearing was held in this matter; the facts were not in dispute. Indeed, an evidentiary hearing is not contemplated by T.C.A. 48-26-104, the statute governing court-ordered inspections, which reads, in relevant part:

> (a) If a corporation does not allow a shareholder who complies with § 48- 26-102(a) to inspect and copy any records required by that subsection to be available for inspection, a court of record having equity jurisdiction in the county where the corporation's principal office (or, if none in this state, its registered office) is located may summarily order inspection and copying of the records demanded at the corporation's expense upon application of the shareholder.

> (b) If a corporation does not within a reasonable time allow a shareholder to inspect and copy any other record, the shareholder who complies with § 48- 26-102(b) and (c) may apply to the court of record having equity jurisdiction in the county where the corporation's principal office (or, if none in this state, its registered office) is located for an order to permit inspection and copying of the records demanded. The court shall dispose of an application under this subsection on an expedited basis.

Moreover, Tenn. R. Civ. P. 52.01 requires the trial court to find the facts only in "actions *tried upon the facts* without a jury ..." (emphasis added). The facts were not in dispute in the case at bar, so this matter cannot be considered an action "tried upon the facts." Therefore, this matter does not appear to fall under the fact-finding requirement set out in Rule 51.02. Finally, as Appellees correctly point out, whether a judge renders findings of fact is a matter in which "some discretion must reside in the trial judge ...." *Bruce v. Bruce*, 801 S.W.2d 102 (Tenn.Ct.App. 1990). We find that the chancery court did not err in failing to render findings of fact. Therefore, this assignment of error is without merit.

# IV. CONCLUSION

We modify the chancery court's judgment to reflect that F. Perlman & Co. has an unqualified obligation to make all of its records encompassed by T.C.A. 48-26-101 and 48-26-102, including its charter, by-laws, minutes of board of directors and shareholder meetings, and accounting records, available to the Panitzes for inspection and copying. Second, we modify the confidentiality agreement upon which the chancery court conditioned the inspection of the corporate records of F. Perlman & Co., American Metal, and Southern Steel, so that the agreement excludes the following type of information from its scope:

(1) Information previously known to Appellants;

(2) Information independently developed by Appellants;

(3) Information acquired from a third party not under an obligation to Appellees not to disclose; and

(4) Information found in the public domain.

The chancery court's judgment is affirmed in all other respects. Costs of appeal are assessed one-half to appellants, Monte Panitz and Barry Panitz, and their surety, and one-half to appellees, F. Perlman & Company, Inc., Allan Perlman, Neil Cohen, Michael Wexler, Southern Steel Supply Company, Inc., and American Metal Sales, Inc.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.